The final case for argument this morning is 161730 Meridian Products v. United States. Now we get to something with a legal framework. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The judgment of the Court of International Trade should be reversed. The trial court erred in two ways. First, it erred by failing to defer to Commerce's reasonable interpretation of scope language. In doing so, the trial court committed a second error by adopting an unreasonable interpretation of the finished goods kit exclusion that fails to give effect to all of the scope language. At issue here is how to interpret the finished goods kit exclusion. Why do you cite geodesic domes rolling if the statute is unambiguous? I'm sorry, the language of the order is unambiguous. Yes. Well, one, because, I mean, yes, if the court were to agree with the trial court that the plain language of the order unambiguously requires Well, you argued that it's unambiguous. Right. We believe that it is unambiguous, but to the extent that interpretation was required, the past interpretations of Commerce were consistent with what it did here. And so in considering the K-1 factors, it was appropriate for Commerce to refer to the geodesic domes scope rolling, because the product there essentially has the same problem that the product, the trim kits have here, which is that the product contains aluminum extrusions which meet the physical description of subject merchandise and fasteners. And under Commerce's reasonable interpretation of the scope language, that product remains subject merchandise and does not fall within the finished goods kit exclusion. The exclusion, I mean, it is a little confusing, is it not? Because the suggestion is these are all, the finished goods kits are excluded. And then it's like an exception to the exception, that even though, I mean, the order says that if it's just the, what you said, the aluminum exclusion plus fasteners, that does constitute a finished goods kit under the order, right? Right, basically meets that description, yes. So it says finished goods kits are excluded, and then it says except finished goods kits. Is that the way you're reading it? Except these kinds of finished goods kits. We're reading that third sentence as a, Commerce reads that third sentence as a qualifier to the exclusion. And we would argue that that's the best reading of the entire exclusion, which starts with an explanation that the scope also excludes finished goods containing aluminum extrusions that are entered unassembled. Yeah, but the easiest way to, it seems to me, the common sense way to have written something is to say finished goods kits are excluded, but then state, but we do not consider these finished goods, but we exclude this from the finished goods kits exception. What they seem to say in the order is an imported product will not be considered a finished goods kit. But it is a finished goods kit. So they're saying even though it's a finished goods kit, we're going to call it something else? Is that the way you're construing the order? Yes, no doubt this could have been written better. We certainly acknowledge that we wouldn't be here today if the language wasn't in some part a little bit confusing. But we think that the best way to read that language is all three sentences together. First, it's a kit that contains aluminum extrusions, which suggests that there is some part that is not aluminum extrusions. Then we have the package combination of parts, and we can see that with the aluminum extrusions and the fasteners, that meets that definition. And then the third sentence, which is that it won't be considered a finished goods kit, and therefore excluded, merely by including fasteners such as screws or bolts. The problem with the interpretation that the trial court adopted is essentially lets the exclusion rule the scope. Talk about brackets. So the brackets in the first remand redetermination, Commerce addressed Meridian's argument that the brackets were not fasteners, and Commerce concluded that they were fasteners because based upon Meridian's— Essentially they're part of a fastener. The short answer is that when the court remanded a second time, it directed Commerce to proceed from a clean slate and to reconsider any arguments that Meridian wanted to make. Meridian did not revive the argument about brackets, and so our argument wasn't— And the trial court agreed in the first instance that that argument had been waived. When the court reconsidered its judgment, it did so not based on that issue, but because it believed that the fasteners— Because it believed that it could, based on the scope language alone, that the fasteners and the aluminum extrusions were sufficient to become excluded merchandise. So our argument here is we do believe that that argument has been waived, and Meridian can't revive it before this court. But in any event, we believe that Commerce's determination is supported by substantial evidence if the court would like to— does find that reconsidering the bracket issue is before this court. As we explained, the trial court essentially reading this language would create an uneven result. So for example, trim, carpet trim, which is identified as subject merchandise, if that were imported by itself and the consumer was directed to go to their hardware store and pick up some screws, that's subject merchandise. But if the screws are included in the packaging with the carpet trim, that now becomes out of scope, excluded merchandise. And that can't be the result. It leads to uneven results, and in one circumstance, essentially the same subject merchandise would become out of scope. It's the same issue we have here. The product here is subject merchandise plus fasteners. The extraneous materials, which I can discuss briefly, but we don't even understand the trial court to be making the argument that the wrench or the instruction booklet would be sufficient to render a product to be excluded merchandise under this particular exception. At best, what the trial court offered was an alternative interpretation. And in that circumstance, the trial court was required, as this court is, to defer to Commerce's interpretation, which is reasonable, which is not contrary to the plain terms of the scope language, and which gives full effect to the language of the entire order. How long has this order been in effect? Since 2011? These orders have been in effect since 2011. And we appealed this decision because we believe that the trial court committed a reversible error of law. But as a practical matter, certainly this particular language of the finished goods kit exclusion has been the language that has invited the most scope ruling requests before Commerce, and as well as litigation before the Court of International Trade. So we do believe it's an important question for the court to address. And I will sit down here. We'll reserve your rebuttal if you need it. Mr. Schaffer? Thank you, Your Honors. May it please the Court. Alex Schaffer from Meridian. I'd like to begin by addressing the waiver issue a bit, with the Court's permission. Meridian's initial scope ruling request argued that these were finished products, finished goods, finished goods kits. And the Commerce Department came back and said, no, all you have are extrusions and fasteners and extraneous things. I'll talk about extraneous things in a moment. After the court initially remanded that determination to Commerce, we laid out our arguments for why that was wrong. We said that's not so, because brackets aren't fasteners, hinge covers are emphatically not fasteners, and instructions and the tool for assembling the very good that we're talking about are not extraneous. And Commerce again said, no, we're not buying this line of argument. At that point, as to those issues about the brackets and the other tools, there was nothing left for us to say. Now, in the second remand, Commerce issued a draft redetermination to the parties in the administrative proceeding below. And what it said was, it was very explicit. It said, we're making our decision consistent with the court's instruction to evaluate what working with something is like. This was in reference to the banner stand rulings and the drapery rail kit rulings and these sorts of things. And they said, we're making that decision notwithstanding the fact that you are just a collection of extrusions and fasteners and extraneous things. In other words, they said, that's off the table. We think you already lose on that ground, and we've already told you why. So this is the thing we're talking about now. And by the way, they gave us four and a half days to respond to that. They issued that at midday on a Thursday and said, your comments are due Tuesday. In the first paragraph of our response, of our comments below, we said, given the time frame, we're providing abbreviated comments. And what we addressed was the analysis that they laid out in their redetermination. We said, the way you're construing what it means to work with something or what it means to be customizable doesn't make sense to us. They then take that into account, expand their redetermination filing before the court, and then come along and say that we've waived the issues about finished product kits. And what the significance of a bracket and a wrench and all these other things are. We never waived any of those issues. And in fact, after those comments were filed in court, we filed a notice of supplemental authority because of an intervening case that had been decided, the Newell Rubbermaid decision. And again, pointed out why it should be the case that these were finished product kits. So at no point did we abandon that. The purposes of our argument. Why are they not simply part of fasteners? I'm not aware of any reasonable definition of a fastener that encompasses brackets. It's a different product. They lend torsional stability. They lend structural stability. They perform different functions than fasteners. They're not attaching anything to anything. Of course they are. I don't see it, Your Honor. They're attaching one extruded piece to another extruded piece. I think that's the screw that's doing that. The bracket may facilitate that, but a bracket in and of itself is not a fastener. Certainly not in the way that we commonly understand with a screw or a nut and bolt or a rivet. And that still, by the way, doesn't take us away from the hinge covers and from the tools and the instructions. If you've ever bought an IKEA bookcase, and it came with all of the fasteners that you require, but without the slightly Swedish-accented instruction manual and the hex wrench, I think you can be forgiven for concluding that kit was incomplete. It required those things. Now, they're not incorporated into the final product. Excuse me, but I've bought any number of IKEA bookcases, and the instructions are useless. That's a fair point, Your Honor. But I guess the way I would say it is this. You're better off with them than without them, and so too here. And what Commerce seems to say on this issue of extraneous materials is, look, if it's not incorporated into the final item, then it's extraneous. That completely undercuts the notion of what a kit is. If you buy a modeling kit and it has an X-Acto knife in it that you use to do it, it's not going to be incorporated into the final item. The example we used in our papers was a painting kit that included the brushes or a crocheting kit that includes the crocheting needles. None of these things are going to be incorporated into whatever your ultimate resultant product is. But, of course, they're part of the kit. They're a critical part of the kit. You can't do what it is that you need to do without them. So this idea of these items being extraneous, that's a convenient way to scoop out anything that's not fasteners and extrusions. But it's analytically completely indefensible in our view. Even if you accept their argument, and we find that it's wrongheaded, that you would just have extrusions and fasteners, I still think their interpretation of what they're calling the fastener exception leads to strangeness. And here's the way I would illustrate that for the Court. What we have, ultimately, is three or four extruded pieces that frame out the appliance. Now suppose that instead of the bottom piece, the kick plate is what they call it in the industry, suppose instead of being an aluminum extrusion that was made from stainless steel to make it more dent resistant. The government's logic requires you to conclude in that situation that now we have a finished product kit. Because now we no longer just have a collection of extrusions and fasteners. Now we have extrusions and fasteners and a chunk of steel and everything is fine. And so this item's status as a finished product kit turns on the composition of one of these panels. There's no basis to think that the petitioners or commerce ever intended that sort of a result. And it's a very strange result because we haven't changed anything about the way the kit is assembled. We haven't changed anything about the way that it's sold, the way that it's used. We've just switched from one piece being aluminum to one piece being steel and poof, it's a finished product kit. Any interpretation that compels a result like that is unreasonable. It makes much more sense to conclude, as Judge Musgrave did, that what this was was an anti-circumvention provision to say, listen, you can't just take a collection of extrusions and throw a packet of screws in and call it a kit, which of course is not what we have. If the court doesn't have any more questions for me, I'll yield the rest of my time. Thank you. Any rebuttals? Let me just briefly make a couple of points. On page 159 of the appendix, this is the first remand redetermination. When commerce specifically addresses the issue of brackets, it refers to the installation booklet, where the booklet explains that the brackets, quote, attach to the angled ends of each side trim and are secured by screws. Then commerce uses the definition that Meridian provided for what a fastener is as any device for holding together two objects or parts. Commerce used both the description of the merchandise that Meridian provided as well as the definition of a fastener that Meridian provided. With respect to the extraneous materials, we're really looking at what the scope language is. Whatever one might colloquially call a kit is not really what we're talking about. We're talking about, does the product contain a package combination of parts? Whatever the wrench or the instruction booklet or the hinge covers are, they're not part of the final finished good, so they're not really relevant. Nor are the hinge covers necessary to the finished good. They're not necessary. They're an option that the end consumer can use, and they're not attached in any way. What about your friend's example about the crochet needles or the knitting needles included in a kit with yarn to make the product? I mean, they don't appear in the final product, but they're certainly necessary and useful. Wouldn't those kinds of elements be included in the finished goods kit? They could be included in a kit, but they wouldn't be the reason that it would be considered a finished goods kit because the definition of what we're looking for is what it is is the finished goods that contain all the containing aluminum extrusions or that contain all the necessary parts to fully assemble the final finished good. So whatever the knitting needles or the wrench, it may be useful, but it does not become part of the final finished good. And I think this is supported by reference to— Wait, I'm sorry. Yes? You're talking about the definition. It says all of the necessary parts to fully assemble a final finished good, right? Correct. And so that wouldn't be something like the knitting needle to put together to knit the yarn? No, and that, we think, is supported by— we think that this language is really talking about what is necessary to assemble the good. What are the parts? We're looking at what the parts are, and if the core— What you're saying is some people have knitting needles at home already. Sure, right, exactly. Although it's a different exclusion, the finished merchandise exclusion that precedes this can sort of be read as a parallel. And the examples that are given there, windows with glass, doors with glass or vinyl, picture frames with glass pane and bit backing, all of those examples include a significant non-aluminum extrusion component. So it's reasonable for Commerce to interpret this parallel exclusion as also having that particular requirement as well. This court must, as the trial court, must uphold Commerce's determination unless the scope ruling is unsupported by substantial evidence or otherwise not in accordance with law. We submit that Commerce's original scope ruling was supported by substantial evidence, is consistent with the scope language, and this court should reverse the trial court's judgment and sustain the scope ruling.  Thank you.